UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

YAGOOZON, INC.,                           :
        Plaintiff,                    :
                                          :
v.                                        :    C.A. No. 14-040ML
                                          :
KIDS FLY SAFE and                         :
SCS DIRECT, INC.,                         :
        Defendants.                   :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      Miffed because Defendant Kids Fly Safe ("Kids Fly Safe") refused to deal with it, Plaintiff Yagoozon, Inc. ("Yagoozon"), filed this action seeking treble damages and other relief, alleging that Kids Fly Safe and one of its distributors, SCS Direct, Inc. ("SCS"), violated § 1 of the Sherman Act, 15 U.S.C. § 1. Kids Fly Safe and SCS responded with a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The motion challenges the sufficiency of Yagoozon's Complaint because of its failure plausibly to allege sufficient facts to establish anticompetitive effects in the relevant market. The motion to dismiss has been referred to me for report and recommendation. For the reasons that follow, I recommend that it be granted.

**I.    Background**[1]

      Plaintiff Yagoozon is a Rhode Island corporation in the business of reselling children's toys, novelty items, party goods and other children's items on the internet and through a brick and mortar store in Florida. Compl. ¶¶ 1, 7, 27. Yagoozon has been successful in marketing its products through Amazon.com, which the Complaint asserts is the world's largest electronic

---

[1] Except as otherwise indicated, these are the facts laid out in the Complaint. In considering this motion to dismiss, I take as true all well-pleaded factual allegations and afford Plaintiff the benefit of all reasonable inferences. Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013).

marketplace, accounting for nearly 10% of all on-line sales. Compl. ¶¶ 9, 11-12. Yagoozon had sales of $18.6 million in 2012, as a result of which it was named the fastest growing retail company in the United States by Inc. Magazine. Compl. ¶ 10.

Defendant SCS competes with Yagoozon in the same on-line market, selling children's toys, novelty items, party goods and other children's items on the internet. Like Yagoozon, one of the on-line outlets through which SCS sells is Amazon.com. Compl. ¶¶ 20-21. Yagoozon believes that it is SCS's biggest competitor on Amazon.com in this market. Compl. ¶ 23. The Complaint has no information about SCS's sales in the market in which it competes with Yagoozon, nor is there any information about the total size of that market, including how many other competitors are participating in it. The Complaint is also silent about where else SCS markets its products, other than through Amazon.com. Finally, there is no suggestion in the Complaint that SCS has market power in any relevant market.

Defendant Kids Fly Safe is the wholesaler of a children's product called CARES Child Aviation Restraint System ("CARES"); it also owns a patent that the Complaint alleges relates to CARES. Compl. ¶ 13. CARES is the world's only belt and buckle airplane safety harness for children certified by the Federal Aviation Administration ("FAA"). Compl. ¶¶ 13-14, 18; FAA Child Safety, http://www.faa.gov/passengers/fly_children/#cares (last visited June 5, 2014).[2] According to the Complaint, CARES and car seats are interchangeable for use as a child safety restraint system on airplanes; however, CARES is more convenient because parents no longer need to haul their car seat through the airport and onto the plane but can check it through to the final destination. Compl. ¶¶ 17-18. The Complaint notes that there are other child airplane

---

[2] Because this website is part of the public record and does not contradict the Complaint, it may be considered by the Court in deciding a Rule 12(b)(6) motion to dismiss. See Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008); In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003).

harnesses available for purchase, but that, so far, only CARES is FAA-certified. Purchasers of competing harness systems need to check in advance with the airline – some airlines may refuse to permit use of a non-FAA-certified harness, but they cannot prevent parents from using CARES. Compl. ¶ 19. Consumers who want to purchase CARES on Amazon.com can choose to buy from a range of vendors, including SCS or any one of twenty others. Compl. ¶ 28. The Complaint speculates that the twenty other vendors of CARES on Amazon.com buy either directly from Kids Fly Safe or from SCS. Compl. ¶ 29.

The Complaint has no information about sales of CARES on websites other than Amazon.com; however, the Court may infer that CARES is also sold through other on-line outlets from the allegation that Amazon.com, albeit the largest on-line marketplace, nevertheless accounts for less than 10 percent of on-line retail sales. Compl. ¶ 11. The Complaint also has no information about CARES sales through bricks and mortar outlets. It is completely silent on the total sales of all child harness systems (FAA-certified and non-FAA-certified) for use on airlines; there is no information about the sales volume or pricing of CARES or how those sales relate to the sales volume and pricing of other child harness systems and car seats (both FAA-certified and non-FAA-certified), including car seats that fit into strollers and eliminate the need to haul not only the car seat, but also the child. The Complaint does not mention the cheapest alternative permitted by the FAA for children traveling by air: children under two may travel in an adult's lap and children over two may travel in a seat restrained by the lap belt supplied by the airline. 14 C.F.R. § 121.311(a)-(b).[3]

---

[3] This Court may consider regulations from the Code of Federal Regulations without converting a motion to dismiss to a motion for summary judgment. United States v. Fink, 393 F. Supp. 2d 935, 939 (D.S.D. 2005); see Greene v. Rhode Island, 398 F.3d 45, 48-49 (1st Cir. 2005) (federal statutes are matters of public record of which court can take judicial notice without converting motion to dismiss into motion for summary judgment); Demick v. City of Joliet, 108 F. Supp. 2d 1022, 1025 (N.D. Ill. 2000) (rules and regulations are matters of public record of which court can take judicial notice without converting motion to dismiss into motion for summary judgment).

On November 11, 2013, Yagoozon asked Kids Fly Safe if it could place a $30,000 order for CARES. Kids Fly Safe refused, initially stating that it has an exclusive distribution agreement with another wholesaler for purposes of sales on Amazon.com; Yagoozon speculates that the other wholesaler is SCS. Compl. ¶¶ 24-26. Yagoozon then asked to buy CARES for resale through its bricks and mortar store in Florida. Kids Fly Safe did not respond, effectively refusing to deal with Yagoozon at all. Compl. ¶ 27.

The Complaint alleges that the relevant market is on-line sales of FAA-certified child safety harnesses, a single product market in which CARES is the only product. Compl. ¶ 30. Because Kids Fly Safe has patented some aspect of CARES, the Complaint alleges that it has power in that market. Compl. ¶ 32. Pleading on information and belief, and with no factual allegations to buttress the conclusion, Yagoozon claims that Kids Fly Safe and SCS violated § 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to oust Yagoozon from the market through an agreement that Kids Fly Safe would not sell to Yagoozon. Compl. ¶ 31. With no factual foundation to explain how or why, Yagoozon concludes that this conspiracy has had a "significant harmful effect" on the relevant market, causing a reduction in competition. Compl. ¶¶ 31, 33.

Kids Fly Safe and SCS have launched a frontal assault on the sufficiency of Yagoozon's Complaint, arguing principally that the single product market named in the Complaint lacks plausibility because it excludes an obvious reasonably interchangeable product, the FAA-certified car seats that parents can use as an alternative as described in the Complaint. In support of this argument, Defendants point to the paragraphs of the Complaint, which state that CARES is interchangeable with car seats as a method of child restraint during flight. Compl. ¶¶ 17-19.

Yagoozon parried this thrust with an opposition accompanied by the submission of new information dehors its Complaint, primarily an affidavit from an economist, Dr. Frederic B. Jennings, but also advertising information about CARES from the Kids Fly Safe website that Dr. Jennings relied on in forming his opinion.[4] The affidavit purports to plug the hole identified by Defendants in the Complaint's relevant market allegations with Dr. Jennings' opinion that there is a minimal level of substitutability between CARES and FAA-certified car seats so that the relevant market is the on-line market for FAA certified aviation child safety harnesses, a single-product market in which CARES is the only product available. Jennings Aff. ¶¶ 10-11. In his affidavit, Dr. Jennings claims to have done an "initial analysis" of substitutability, "without having had the benefit of discovery." Jennings Aff. ¶¶ 8-9. He avers that this analysis has led him to conclude that FAA-certified car seats and CARES are not substitutable because CARES cannot be used in automobiles and car seats are less convenient than CARES for air travel. Jennings Aff. ¶ 9. Somewhat illogically, Dr. Jennings also purports to rely on Kids Fly Safe's product testimonials to support his conclusion – to a lay reader like this writer, these advertising materials seem aimed at persuading consumers to buy CARES instead of buying an FAA-certified car seat, powerful evidence that Kids Fly Safe sees car seats as its competition. See Jennings Aff. ¶ 10.

## II.  Conversion of the Motion to Dismiss to a Motion for Summary Judgment

The first issue for determination is whether this motion should be decided as a motion to dismiss, or whether the submission of the Jennings Affidavit and the quotations from the Kids

---

[4] Yagoozon quotes from what purport to be customer testimonials on the Kids Fly Safe website in its Objection to Defendants' Motion to Dismiss. ECF No. 14-1 at 8-10. Dr. Jennings says that he reviewed "many product testimonials reported on the Kids Fly Safe website and elsewhere," but provides no detail as to what he considered. Jennings Aff. ¶ 10. The Court assumes that the material on which Dr. Jennings relied is the same as that quoted in Yagoozon's brief.

Fly Safe product testimonials should cause it to be converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). The difference is material to Yagoozon: under Fed. R. Civ. P. 12(b)(6), this Court assumes the facts in the Complaint are true and construes all reasonable inferences from those facts in the light most favorable to Yagoozon, while Fed. R. Civ. P. 56 requires it to present competent evidence that would be admissible at trial to avoid summary judgment. See Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed. 2014) (non-movant unlikely tactically to introduce outside material because Rule 12(b)(6) motion usually not granted on merits, while summary judgment is binding determination).

A district court has discretion whether to consider matters outside the pleadings, but if it does so, it must follow Fed. R. Civ. P. 12(d) and convert the motion to dismiss to a motion for summary judgment. Royal Bank of Scotland v. M/T STAVRODROMI, No.11-372ML, 2013 WL 1343538, at *3 (D.R.I. Feb. 12, 2013) (citing Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). Fed. R. Civ. P. 12(d) makes conversion mandatory unless the court excludes the new material:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The requirement of a reasonable opportunity to present all the material that is pertinent to the motion is echoed in Fed. R. Civ. P. 56(f), which makes clear that the court must give notice and a reasonable time to respond before it grants summary judgment *sua sponte*.

In practice, when the movant submits new material, courts are solicitous of the right of the non-movant to have a reasonable opportunity to present pertinent material by requiring adequate notice to the parties of the court's intent to convert; however, courts are less scrupulous when it is the non-movant that has submitted the new material, treating that party as being on

6

constructive notice by its action. Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998) (notice requirement satisfied when party appends materials dehors pleadings putting him on constructive notice that conversion might occur); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 5 n.6 (1st Cir. 1998) (where motion to dismiss attached only contract that was integral to complaint, but plaintiffs responded with affidavit, "plaintiffs *invited* the conversion") (emphasis in original). "[A] party who invites conversion scarcely can be heard to complain when the trial court accepts the invitation." Collier, 158 F.3d at 603. Nevertheless, even when it is the non-movant that has supplemented its own pleading with new material, conversion is disfavored unless the case has reached the stage where there has been sufficient factual development so that the parties have a true "reasonable opportunity" to present pertinent summary judgment materials. Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 475-76 (1st Cir. 2000) (non-movant's submission of expert report in case where discovery well underway justifies conversion). Conversion is not appropriate when the motion comes quickly after the filing of the complaint, discovery is in its infancy and both the movant and the non-movant are limited in obtaining and submitting evidence. Id. at 475.

Here, Defendants have professed agnosticism as to whether the Court should convert. While they still urge that the better course is for the Court to exclude the extraneous material and grant their motion to dismiss, they also contend that, if the Jennings Affidavit is considered, the Court should grant summary judgment in their favor because Yagoozon has failed to proffer admissible evidence on any issue other than relevant market and even that evidence is deficient in that the Jennings Affidavit tacitly concedes that CARES and FAA-approved car seats are interchangeable on airplanes. Yagoozon, by contrast, seems in favor of conversion. At oral

7

argument, its counsel professed that it preferred that Defendants' motion to dismiss be treated as a motion for summary judgment:

> I would prefer that this actually be treated as a motion for summary judgment. As a matter of fact I think that would be the correct standard in this case because there's been no fact development. I think the only genuine issue of fact that has been created has been created by our expert which hasn't been rebutted by any expert's affidavit on the other side. In cases in which courts convert motions to dismiss to motions for summary judgment, typically affidavits come in, exhibits come in, and . . . the plaintiff is really allowed to develop their case to demonstrate that issue of fact. Do I even think we need that in this case? I don't know, I don't think so because I think we have an issue of fact. But again, I think it's a fact intensive inquiry – I would welcome you converting this to a motion for summary judgment. I don't object to that.[5]

Based on this analysis, Yagoozon's position seems to be that summary judgment should be denied both because further factual development (i.e., discovery) is needed and because the Jennings Affidavit creates a fact issue on one element of its claim.

Both parties forget that summary judgment requires a properly-supported motion asserting entitlement to summary judgment, which shifts the burden to the nonmoving party to present evidence showing the existence of a trial-worthy issue. Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004). Because of the total absence of factual development in this case, neither Yagoozon nor Defendants have met this standard. Far from a factually-developed matter where summary judgment is the appropriate standard, this case presents a paradigmatic Fed. R. Civ. P. 12(b)(6) motion – it comes as the opening gambit in a case where that has been no discovery whatsoever and neither Defendants nor Yagoozon has the ability to submit the level of evidence that would permit the Court to responsibly perform a summary judgment analysis. Indeed, the very affidavit that has called conversion into question is expressly limited (and accordingly of limited value) because Dr. Jennings' opinion was formed

---

[5] This transcription was informally prepared from the recording of the hearing on this motion held on April 16, 2014. It is at 10:37:55 a.m. to 10:38:46 a.m.

without the benefit of any discovery. See Jennings Aff. ¶¶ 8-11 (every substantive paragraph cabined by the warning that it was written "without having had the benefit of discovery").

In this circumstance, conversion would send this case skidding down the discovery slope because the Court would have to respect the need of Yagoozon for delay to develop the facts pertinent to summary judgment, which is its right under both Fed. R. Civ. P. 12(d) and Fed. R. Civ. P. 56(d). Such a course makes no sense if the Complaint otherwise fails to state a claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558-60 (2007) (antitrust defendant should not be pushed into costly discovery). Particularly because this is an antitrust case, this Court should avoid a decisional course that absolves Yagoozon of its Twombly responsibility to plead plausible facts. Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1338 (11th Cir. 2010). At bottom, treating this motion to dismiss as a motion for summary judgment is inappropriate because that course would be directly contrary to the well-settled principle that conversion is disfavored at this early stage of the proceeding. Rubert-Torres, 205 F.3d at 475.

Based on the foregoing, I recommend that this Court exercise its discretion to decline to convert this motion to dismiss to a motion for summary judgment. See Trans-Spec Truck Serv., Inc., 524 F.3d at 321. Rather, as required by Fed. R. Civ. P. 12(d), the Court should exclude the Jennings Affidavit and customer testimonials from consideration and proceed to test the viability of the Complaint without regard to them.

### III. Standard of Review

#### A. Standard for Motion to Dismiss

I begin my assessment of the sufficiency of Yagoozon's antitrust claims by setting out the standard for reviewing a motion to dismiss an antitrust claim. As the Supreme Court instructed in Bell Atlantic Corp. v. Twombly, a case also brought under § 1 of the Sherman Act, this Court

must determine whether the Complaint, in asserting a conspiracy or agreement in restraint of trade, contains "allegations plausibly suggesting (not merely consistent with) [a conspiracy or] agreement," that is, whether the complaint "possess[es] enough heft to show that the pleader is entitled to relief." 550 U.S. at 557 (quotations and alteration omitted). Plausibility is the key, as the well-pled allegations must nudge the claim "'across the line from conceivable to plausible.'" See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2012) (quoting Twombly, 550 U.S. at 570). And to nudge the claim across the line, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555); Jacobs, 626 F.3d at 1332-33. Twombly specifically considered the cost of antitrust discovery, an expense that "will push cost-conscious defendants to settle even anemic cases," in concluding that some "threshold of plausibility must be crossed at the outset before a[n] . . . antitrust case should be permitted to go into its inevitably costly and protracted discovery phase." Twombly, 550 U.S. at 558 (quoting Asahi Glass Co. v. Pentech Pharm., Inc., 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation)).

### B. Antitrust Principles

Section 1 of the Sherman Act makes unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. As interpreted, the Act absolutely condemns only a narrow band of concerted conduct, the so-called *per se* violations. Other concerted business arrangements are evaluated

10

under the flexible, case-by-case standard that has come to be known as the "rule of reason." See Standard Oil Co. v. United States, 221 U.S. 1, 58–62 (1911) (adopting the rule of reason). In a case governed by the rule of reason, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." Cont'l T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 49 (1977); Jacobs, 626 F.3d at 1333-34. To make that determination, the court must examine whether the adverse effect on competition outweighs the procompetitive virtues of the conduct. GTE Sylvania Inc., 433 U.S. at 49 n.15.

As plaintiff, Yagoozon bears the burden of proving that a restraint has (or is likely to have) a substantial anticompetitive effect on competition. United States v. Arnold, Schwinn & Co., 388 U.S. 365, 374 n.5 (1967), overruled on other grounds, GTE Sylvania, 433 U.S. at 58-59. Anticompetitive effects include reduction of output, increase in price or deterioration in quality. United States v. Brown Univ., 5 F.3d 658, 668 (3d Cir. 1993). Consumer welfare, understood in the sense of allocative efficiency, is the animating concern of the Sherman Act. Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 221 (1993) (noting the antitrust laws' "traditional concern for consumer welfare and price competition"). At the pleading stage, Yagoozon must assert "specific factual allegations" sufficient to demonstrate actual or potential harm to competition, that is, anticompetitive effects on some relevant market caused by the challenged conduct. Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc., 376 F.3d 1065, 1071-73 (11th Cir. 2004); see also Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 45 (1st Cir. 2013) (on motion to dismiss, question is whether there are sufficient factual allegations to make the complaint's claim plausible).

## C. Actual or Potential Harm to Competition

The conduct challenged by Yagoozon's Complaint is categorized for antitrust purposes as a non-price vertical restraint. A fair read of the Complaint establishes that what Yagoozon is really upset about boils down to Kids Fly Safe's simple refusal to sell to it[6] in a market characterized by significant intrabrand competition.

For starters, a refusal to deal, standing alone, not only is not actionable, but actually is protected conduct under the antitrust laws. United States v. Colgate & Co., 250 U.S. 300, 307 (1919) (Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal"). It is the right of a seller like Kids Fly Safe to choose one or a few dealers, at its option, as an exercise of its inherent entitlement to choose its own customers. See Phillip E. Areeda & Hebert Hovenkamp, 8 Antitrust Law: An Analysis of Antitrust Principles & Their Application ¶ 1652b (3d ed. 2013); see also Colgate, 250 U.S. at 307. While the right to refuse to deal is not completely unqualified, in Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398 (2004), the Supreme Court not only reaffirmed it but also narrowed substantially the circumstances where it may be circumscribed, holding that "[n]o court should impose a duty to deal that it cannot explain or adequately and reasonably supervise." Id. at 415-16 ("Sherman Act is indeed the 'Magna Carta of free enterprise,' but it does not give judges *carte blanche* to insist that a monopolist alter its way of doing business whenever some other approach might yield greater competition.") (internal citations omitted). Even a monopolist generally may refuse to deal or refuse to sell a unique product for any reason.

---

[6] The Complaint pleads that Kids Fly Safe refused Yagoozon's first request to place an order, excusing its refusal based on an exclusive distribution arrangement affecting sales through Amazon.com. When Yagoozon tried again, offering to resell at its Florida store and not on Amazon.com, Kids Fly Safe simply failed to respond. This amounts to a refusal to deal.

Homefinders of Am. v. Providence Journal Co., 621 F.2d 441, 443 (1st Cir. 1980) (monopoly newspaper may refuse to deal). To the extent that this Complaint, fairly read, pleads no more than a refusal to deal, it fails to state a claim and should be dismissed.

By stretching to read the Complaint generously in favor of Yagoozon, at most, the Court finds a pleading that claims a narrow exclusive distributorship[7] affecting only an insignificant portion of intrabrand sales. The Complaint is clear that whatever Kids Fly Safe might have agreed to with SCS (or some other entity) is limited to Amazon.com and does not affect other on-line websites (which represent more than 90 percent of on-line sales according to the Complaint) or other channels of distribution, like stores. The Complaint also makes clear that, on Amazon.com alone, there are at least twenty other resellers of CARES, permitting the inference of vibrant intrabrand competition.

With these facts to mold into a claim, Yagoozon faces a steep climb to establish a plausible theory of illegality. "When an exclusive distributorship is not part and parcel of a scheme to monopolize and effective competition exists at both the seller and buyer levels, the arrangement has invariably been upheld as a reasonable restraint of trade. In short, the rule [i]s virtually one of per se legality . . . ." Packard Motor Car Co. v. Webster Motor Car Co., 243 F.2d 418, 420-21 (D.C. Cir. 1957) (quotation marks omitted) (cited in Monahan's Marine, Inc. v. Boston Whaler, Inc., 866 F.2d 525, 528 (1st Cir. 1989), for the proposition that "exclusive dealership agreements . . . are not unreasonable restraints of trade under § 1"). Indeed, such non-price vertical restraints, including those that amount to a true exclusive distributorship, not only are the most benign in the antitrust panoply, but are generally procompetitive and should not be

---

[7] An exclusive distributorship is an arrangement that provides a distributor with the right to be the sole outlet for a manufacturer's products in a given territory, here the on-line retail website operated by Amazon.com. ABA Section of Antitrust Law, I Antitrust Law Developments 161 (7th ed. 2012).

13

deterred by antitrust enforcement. See Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 728 (1988). Even if this Complaint alleged – which it does not – that SCS actively sought Kids Fly Safe's refusal to sell to its competitor Yagoozon, such conduct, without more, is classified as "legitimate and competitively useful," and courts have long recognized that it should not be deterred by the risk of treble damages. Id. (supplier's termination of dealer at request of competing dealer with no agreement on price not illegal *per se*; "vertical restraints . . . such as the initial granting of an exclusive territory" should not be deterred).

These principles are illustrated by a case with a complaint similar to Yagoozon's pleading, asserting a single product market based on a patent, but also with an absolute exclusive distributorship agreement that barred the manufacturer from selling to any other firm including the plaintiff. Sheet Metal Duct, Inc. v. Lindab, Inc., No. CIV. A. 99-6299, 2000 WL 987865, at *5 (E.D. Pa. July 18, 2000). The court held that "[i]t is not misuse of patent rights for a patentee to deal only with those with whom it pleases." Id. The Sherman § 1 claim was dismissed based on the "fundamental legitimacy of the exclusive distributorship arrangement for the patented product." Id. at *6. Absent plausible factual allegations of market "foreclosure of substantial dimensions," and immediate and future effects on competition, it is well settled that an exclusivity restriction does not restrain trade. U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 596-97 (1st Cir. 1993) (citing Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 329 (1961)).

Yagoozon's Complaint not only fails to allege "foreclosure of substantial dimensions" but rather describes a market characterized by vibrant intrabrand competition, where consumers can buy CARES from a wide array of sellers just through the Amazon.com website. Further, the allegation of foreclosure affects only a single channel of distribution – there are no facts

14

suggesting that CARES is not sold through other channels. See Se. Mo. Hosp. v. C.R. Bard, Inc., 642 F.3d 608, 615-16 (8th Cir. 2011) (summary judgment in favor of supplier where no evidence that other distribution channels not substitutable). Such a Complaint is utterly implausible in nudging a claim that a non-price vertical restraint plausibly violates the antitrust laws "across the line." See Twombly, 550 U.S. at 570.

While Yagoozon's Complaint lacks plausibility even if its conclusory pleading that Kids Fly Safe has market power is accepted, this allegation itself is deficient. The Complaint is plain that Yagoozon's claim that Kids Fly Safe has market power is based entirely on the existence of a patent. Compl. ¶ 32. In 2004, the Supreme Court considered the legal sufficiency of a patent, standing alone, to prove the existence of market power and found it inadequate. Ill. Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28, 31, 45-46 (2006) (mere existence of patent does not carry presumption of market power). Accordingly, the Complaint does not plausibly allege facts establishing that Kids Fly Safe has market power. And Yagoozon has not even attempted to allege that SCS has market power.

The final nail in this Complaint's coffin is Yagoozon's failure plausibly to allege facts sufficient to support the inference of anything more than its loss of sales. See TechReserves Inc. v. Delta Controls Inc., No. 13 Civ. 752 (GBD), 2014 WL 1325914, at *7 (S.D.N.Y. Mar. 31, 2014) (viable Sherman Act claim requires pleading with factual allegations of harm to competition, not just injury to individual competitor). The mere fact that Yagoozon was not chosen to distribute CARES does not call into question the competitiveness of the distribution market. See Areeda & Hovenkamp, *supra*, ¶ 1654c ("Even when the manufacturer enjoys a monopoly, multiple sole outlets in the brand may nevertheless compete with each other, unless they are insulated from each other by (1) wide spacing and either transport costs or consumer

preferences or (2) contractual customer or territorial restraints."). That Yagoozon has lost some business because it was denied the right to resell CARES is beside the point. SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp., 188 F.3d 11, 26 (1st Cir. 1999) ("That [plaintiff] may have lost business as a result of [defendant]'s policy is not, in and of itself, a concern of the antitrust laws. Antitrust law is designed to protect competition, not competitors.") (citing Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458-59 (1993)). As our Circuit has colorfully made plain, antitrust has eschewed the "no sparrow shall fall" concept in favor of the ascendant view that antitrust protects competition. U.S. Healthcare, Inc., 986 F.2d at 597. A viable antitrust claim must allege sufficient facts to support the inference that the defendants' conduct causes actual antitrust injury in the alleged market as a whole. TechReserves Inc., 2014 WL 1325914, at *8. Yagoozon's Complaint fails to do so. With no factual allegations permitting the inference that Defendants are engaged in sinister practices or otherwise suffocating competition, this pleading is insufficient to "block the swing of the . . . ax." SMS Sys. Maint. Servs., Inc., 188 F.3d at 27.

The analysis can stop here. Yagoozon's Complaint fails to state a claim because it has failed plausibly to allege actual or potential injury to competition arising either from Kids Fly Safe's refusal to sell to it or from Kids Fly Safe's exclusive distributorship for on-line sales of CARES through Amazon.com. Accordingly, I recommend that the Complaint be dismissed.[8]

---

[8] I note that this analysis of the viability of Yagoozon's Complaint does not consider the sufficiency of the Complaint's relevant market allegations because I have excluded and must avoid reliance on the Jennings Affidavit and the website testimonials. Put differently, whether the relevant market is the "online market for FAA-certified aviation child safety harnesses," as the Complaint alleges and Dr. Jennings opines, or whether that market is implausible because the Complaint fails to consider substitutable car seats, as Defendants argue, Yagoozon has failed to state a claim because of the failure plausibly to plead actual or potential harm to competition.

### D. Relevant Market

Defendants' primary attack on the sufficiency of Yagoozon's Complaint focused on the implausibility of the relevant market allegation in a pleading that acknowledged the interchangeability of CARES and car seats on airplanes, yet alleged a single product market comprising only CARES. On reply, Defendants reassert these arguments, adding that Yagoozon's submission of the Jennings Affidavit is a tacit acquiescence to the inadequacy of its first effort. I have declined to rely on that approach because it invites an amendment to the Complaint to incorporate the Jennings Affidavit's averments, followed by another round of motions. Rather, so far, this report and recommendation has circumvented the CARES/car seat market allegations and focused instead on the Complaint's deficiency in failing to plead the essential element of injury to competition. See, e.g., Jacobs, 626 F.3d at 1340 (even if complaint assumed adequately to plead relevant market, it fails to allege actual or potential harm to competition); TechReserves Inc., 2014 WL 1325914, at *7 (concerns about relevant market aside, plaintiff failed to allege actual harm to competition). Nevertheless, and mindful that "[t]here is no subject in antitrust law more confusing than market definition," U.S. Healthcare, Inc., 986 F.2d at 598, I pause now to examine the plausibility of Plaintiff's Complaint in pleading a relevant market. In doing so, my focus is on whether there is still a deficiency in Yagoozon's pleading of a viable relevant market when the Court not only excludes consideration of the new material in the Jennings Affidavit and from Kids Fly Safe's website, but also eschews an analytical approach that focuses on the hole in the Complaint that this extraneous material was submitted to fill.[9] I find there is and that this deficiency also dooms Yagoozon's Complaint.

---

[9] In effect, I am treating the Complaint as cured by the Jennings Affidavit, accepting its conclusions as true as if they were part of the Complaint. See Peoples v. Bank of Am., 11-2863-STA, 2012 WL 601777, at *6 n.34 (W.D. Tenn. Feb. 22, 2012) ("Even if the Court looked beyond the pleadings and considered Plaintiff's affidavit, Plaintiff has not shown an entitlement to relief based as to this claim."); Evridge v. Rice, CIV.A. 3:11-40-DCR, 2011 WL 6014407,

An antitrust plaintiff like Yagoozon, which makes a claim that relies on the rule of reason, must not only allege actual or potential harm to competition, but also must identify the relevant market in which the harm occurs. See Fed. Trade Comm'n v. Ind. Fed'n of Dentists, 476 U.S. 447, 460–61 (1986); see Levine v. Cent. Fla. Med. Affiliates, Inc., 72 F.3d 1538, 1551 (11th Cir. 1996) (plaintiff must define relevant market and establish that defendants possessed power in that market). "A relevant market can include products that are substantially different from one another, but that provide similar functions to consumers." ABA Section of Antitrust Law, I Antitrust Law Developments 580 (7th ed. 2012). Defining the relevant product market involves identifying "producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services." Levine, 72 F.3d at 1552. "The 'market is composed of products that have reasonable interchangeability.'" Id. (quoting United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 404 (1956)). The court should look "to the uses to which the product is put by consumers in general." Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 438 (3d Cir. 1997). Relevant market analysis seeks to capture the very complex economic interactions between a number of differently situated buyers and sellers, each of whom in reality has different costs, needs and substitutes. See E.I. du Pont De Nemours & Co., 351 U.S. at 394-404. At bottom, "[i]f consumers view the products as substitutes, the products are part of the same market." Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 1421, 1435 (9th Cir. 1995).

---

at *5 (E.D. Ky. Dec. 2, 2011) ("even if the Court were to consider [the affidavit], [it] would not save [plaintiff's] claims"); cf. Smith v. Westchester Cnty. Dep't of Corr., 07 CIV.1803, 2008 WL 361130, at *4 (S.D.N.Y. Feb. 7, 2008) ("because plaintiff is proceeding pro se, the factual allegations raised in his affidavit in opposition [to the motion to dismiss] will be treated as an amendment to his Complaint").

Yagoozon's lack of access to discovery does not absolve it of the responsibility under Twombly to plead facts "plausibly suggesting" the relevant submarket's composition. Jacobs, 626 F.3d at 1337-38. Here the pleading, supplemented by the FAA regulations, of which this Court may take judicial notice, suggests an array of choices available to consumers apart from CARES (and car seats, which I exclude from consideration to avoid conversion): the Complaint describes other child airplane harnesses while the regulations establish the viability of using what the airline already offers for the price of the ticket. Further, the relevant market Yagoozon claims is a single product market, an allegation that flies in the face of well-settled authority that, generally, a single product cannot be its own relevant market without factual allegations establishing true market dominance. See Discon, Inc. v. NYNEX Corp., 86 F. Supp. 2d 154, 160-61 (W.D.N.Y. 2000) (no Sherman Act violation where alleged product market was defendant's own channel; company permitted to hold natural monopoly over its own product); Disenos Artisticos E Industriales, S.A. v. Work, 714 F. Supp. 46, 47-48 (E.D.N.Y. 1989) (general single product market cannot be its own relevant market).

Here, there are no factual allegations of cross-elasticity of demand or other indications of price sensitivity that would indicate whether consumers treat the available options as substitutable. Consumer preferences for CARES versus non-FAA-certified harnesses or placing the child on an adult's lap or in the seat belt attached to the seat may vary widely, may vary little, or may not vary at all. Yagoozon's Complaint provides no indication. The allegations that CARES is more reliable because not all airlines accept non-FAA-certified harnesses is of little help because it does not indicate the degree to which consumers balance these considerations with differences in price. See Jacobs, 626 F.3d at 1338-39. Without any factual allegations on these matters crucial to drawing a relevant market, the notion that CARES comprises its own

19

relevant market makes no sense.  Accordingly, this Complaint fails to state a claim.  <u>Bayer Schering Pharma AG v. Sandoz, Inc.</u>, 813 F. Supp. 2d 569, 576 (S.D.N.Y. 2011) (motion to dismiss Sherman § 1 claim "is appropriate where . . . the proposed market makes no rational or economic sense and is far too narrow") (quoting <u>McCagg v. Marquis Jet Partners, Inc.</u>, No. 05 CV 10607 PAC, 2007 WL 1568238, at *6 (S.D.N.Y. Mar. 29, 2007)).  Further, based on this analysis, an amendment to the Complaint that simply adds the conclusions in the Jennings Affidavit should be denied as futile.[10]  This Complaint needs far more heft than that to nudge it close to, never mind over, the line.  <u>See</u> <u>Twombly</u>, 550 U.S. at 570.

## IV. <u>Conclusion</u>

Based on the foregoing, I recommend that the motion to dismiss (ECF No. 13) of Defendants Kids Fly Safe and SCS Direct, Inc. be GRANTED and that Yagoozon, Inc.'s Complaint (ECF No. 1) be dismissed.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan  
PATRICIA A. SULLIVAN  
United States Magistrate Judge  
June 6, 2014

---

[10] Yagoozon has not requested leave to amend its Complaint and may not after judgment is entered except pursuant to Fed. R. Civ. P. 59.  <u>In re Genzyme Corp.</u>, No. 13-1085, slip op. at 33-35 (1st Cir. June 5, 2014).